## Samuel's Estate

*Richard K. Stevens*, of *Stradley, Ronon & Stevens*, and *William Steeble*, for exceptants.

*Raymond M. Remick*, of *Saul, Ewing, Remick & Saul*, contra.

LADNER, J., December 9, 1938.—Two sets of exceptions are before us for disposition, filed on behalf of John D. Samuel and Edward Samuel, Jr., respectively. We consider first the exceptions filed on behalf of John D. Samuel.

The relevant facts giving rise to these exceptions are: David Samuel, testator, bequeathed $4,000 to his trustees to pay the income to his grandchild for life, "and if she shall die without leaving issue [and she did] to pay the [principal sum] to my five children as hereafter named in Eighth direction. . . ." The eighth item of the will thus referred to reads: "All the rest, residue and remainder of my Estate . . . I devise and bequeath unto my children, Henry, John, Eleanor, Edward and Joseph Bunford, their heirs and assigns forever, share and share alike in equal parts."

John D. Samuel, exceptant, is the appointee of Henry Samuel, one of the five children just mentioned, and he claims one fifth of the $4,000 on the theory that since item thirteenth of the will requires the share given to Henry Samuel in the residuary clause (eighth item) to be held as a spendthrift trust, with a limited power of appointment, he (exceptant and appointee) is entitled to the

award of Henry's one fifth of the $4,000, now awarded by the adjudication to Henry's personal representatives.

To sustain exceptant's position counsel urges that the phrase of the third item "as hereafter named in the Eighth direction" controls the *manner* of disposition. He offered extrinsic evidence that Henry was a spendthrift which evidence was taken subject to objection but afterward excluded by the learned auditing judge who then ruled that the reference to the eighth item by the phrase above quoted was merely to identify the recipients and not to control the character of the bequests.

The questions are raised by the exceptions filed by the appointee: (*a*) Whether the exclusion of the evidence taken subject to objection was error; and (*b*) whether the award to the personal representatives of Henry was proper.

Counsel in support of his position on the first question cites Sterrett's Estate, 322 Pa. 300, and urges that the evidence excluded was admissible as part of the circumstances attending the decedent in order to determine the intention.

The correct principle is that where there is a doubt as to the language of the will the court may seek its assistance from the circumstances attending the decedent, such as the condition of the testator's family, the amount and character of his property, and the object of his bounty: Sterrett's Estate, supra; but not to alter or add to the terms of the will: Penrose's Estate, 317 Pa. 444, 448. We fail to see that the ruling of the auditing judge is of any consequence, in view of the fact that at most it merely places upon the record the fact that Henry was a spendthrift—a fact plainly inferable from the thirteenth item of the will creating such a trust. If, therefore, there was any error (and we do not say there was because we regard the will in this particular to be unambiguous) it was at most a harmless error—it being but cumulative evidence of a fact not in dispute.

Nor do we find any merit in the exceptions raising question (b), namely, to the propriety of the award to Henry's personal representatives. We are all in accord with the auditing judge's conclusion that it is not clear that the reference in the third item to the eighth item was for any purpose other than to identify the beneficiaries to avoid repeating their names, a familiar practice: Lejee's Estate, 5 Dist. R. 236 (1896); Packer's Estate (No. 2), 291 Pa. 198 (1927). Moreover, any argument made to the contrary based upon the fact that Henry was a spendthrift loses much of its force when we consider the smallness of the amount bequeathed, which could not exceed $800 and actually amounted to but $600.

Exceptions filed on behalf of Edward Samuel, Jr.

These exceptions raise a single question, namely, whether the learned auditing judge erred in holding that the substitutionary gift to the issue of decedent's children in the third item of the will is applicable only to the issue of those children who may die before testator.

The third item of the will which gives rise to the question reads as follows:

"I hereby appoint my son John Samuel and my son Edward Samuel trustees as to the sum of four thousand dollars ($4000) to pay the Income thereof to my Grandchild Maria Myers, child of my deceased daughter Clara Myers; and at her decease to pay the principal sum, to the issue of my said Grandchild her surviving; and if she shall die without leaving issue, to pay the same to my five children as hereafter named in Eighth direction; and the issue of any deceased child—such issue to take the parents share and remainder." The eighth item referred to by item third reads:

"All the rest, residue and remainder of my Estate real and personal, whatsoever and wheresoever, I devise and bequeath unto my children, Henry, John, Eleanor, Edward and Joseph Bunford, their heirs and assigns forever, share and share alike in equal parts."

In construing these clauses the learned auditing judge said, inter alia, "The five children survived the testator, but all died before the life tenant, some of them leaving issue. The will expresses no contingency with respect to survivorship of any of these persons to any particular time. The only contingency is whether Maria Myers, life tenant, shall die leaving issue. Therefore at the death of the testator his five children became entitled in remainder subject only to the contingency with respect to the issue of Maria."

With respect to the substitutionary gift to the issue of the deceased children this was construed as applicable only to the issue of those children who may have died before testator, for the reason "such substitution can be equally well referred to the lifetime of the testator and in order to favor vested estates it is so construed unless there is something in the will to the contrary. There is nothing in the will to the contrary."

Accordingly, the learned auditing judge held the interests of the five children who survived testator were vested, and made awards to their personal representatives, or, in case their respective estates had been settled, etc., to those properly entitled thereto.

Perhaps no question has given rise to more apparently conflicting cases than the one involved in the construction of the clauses in this will. So many learned reviews of these authorities now exist, that we refrain from again exploring the field and refer merely to the excellent opinions in Neel's Estate, 252 Pa. 394 (1916), Alburger's Estate (No. 2), 274 Pa. 15, 30 Dist. R. 301, Carson's Estate, 16 D. & C. 99 (1932), Nass' Estate, 320 Pa. 380 (1936), and Hood's Estate, 323 Pa. 253 (1936), and the wealth of authorities cited in them, all of which only serve to emphasize the principle that " 'precedents are of little value in the construction of wills, because, when used under different circumstances and with different context, the same words may express different intentions' ": Long's Estate, 270 Pa. 480, 487 (1921). In view of this

principle it would serve no good purpose to endeavor to reconcile by distinguishing the difference in wordings of many wills construed. We content ourselves with the observation that all the authorities recognize and leave unimpaired the general rule referred to by the learned auditing judge and well stated by Judge Penrose in Sterling's Estate, 24 W. N. C. 495, cited with approval by Judge Gest whose opinion was adopted by the Supreme Court in Handy's Estate, 314 Pa. 61 (1934), viz., "in the absence of controlling evidence of a different intention, the survivorship will be understood as referring to the death of the testator."

We have carefully examined the record, considered the circumstances bearing upon testator's intention and, notwithstanding the able argument of counsel for exceptant, agree with the learned auditing judge that there is no controlling evidence of any different intention to overcome the application of the rule quoted.

Accordingly, all exceptions are dismissed and the adjudication is confirmed absolutely.

Judge Bolger dissents in part, and Judge Klein joins therein.

BOLGER, J., dissenting. — The exceptions of Edward Samuel, Jr., should be sustained involving the failure of the auditing judge to award him his share as issue of a child of the testator, his father having survived testator but predeceased the life tenant.

The learned auditing judge and the learned majority opinion err when they hold that "the substitutionary gift to the issue of deceased children is to be construed in the usual way as applicable only to the issue of those children who may die before the testator." They fail to apprehend that the substitution here is not of a legacy, but involves the substitution of a limitation over after a life estate. This distinction is clearly defined by Ashman, J., in Breese's Estate, 2 Dist. R. 364. There, after a life estate to his widow, testator gave a one-seventh part of his estate to his brother Sidney Breese "or in case of his de-

cease, to his surviving children". Sidney predeceased the widow leaving four children, one of whom, James B. Breese, afterwards died in the widow's lifetime. The court held that:

"If the gift to him, and, in case of his death, then over, had stood by itself, the period of his death would have referred to the lifetime of the testator, and the legatee, having outlived the testator, would have taken absolutely. This construction is one of necessity, no other time than the lifetime of the testator being of possible assignment in such a case. It is open to the objection that a testator rarely anticipates the death of a legatee or devisee before his own; and it will not be adopted when, by reason of any provision in the will, another period can be taken as the period of death. When, therefore, a gift of a particular interest in the same property precedes the gift to the person of whom the death is predicated, that event will be construed to mean a death in the lifetime of the particular estate: Smith's Ex. Int., §658 . . . the gift to the children was not a remainder nor a limitation qualifying their fee; it was an alternative or substituted gift, which took the place of the estate of Sidney, the first taker, when that expired by reason of his death during the continuance of the life estate."

The leading case on such substitutionary gifts over is Carstensen's Estate, 196 Pa. 325. Justice Mestrezat there said (p. 335):

"The testatrix in her will makes an absolute bequest to her brothers and sisters and then is added the clause: 'the child or children of any of my said brothers and sisters who may then be dead, to take and receive the share that his or their parent would have taken if living'. There is no provision made in the will for the disposition of the interest of any brother or sister who might die prior to the death of the life tenant without leaving a child or children. In such an event, there is no divestiture of the title acquired by the general bequest. But should any of the brothers or sisters die leaving children during the life

tenancy, the effect would be, under the clause we have just quoted, to divest the interest the deceased parent acquired under the preceding clause of the will. The substituted legacy would thus become complete on the happening of this contingency and the interest bequeathed to the deceased parent would vest in his surviving child."

Again in Tomlinson's Estate, 61 Pa. Superior Ct. 23, it was held that although the remaindermen took vested interests at the decease of testator, their interests were subject to be divested in case of their decease during the pendency of the life estate; citing Burk's Estate, 21 Dist. R. 357.

Therefore the exceptions should be sustained in favor of the issue of a child who died leaving issue.

KLEIN, J., concurs in this dissenting opinion.